is Travelers Property Casualty Company of America versus Robert Mericle. Mr. Cruz. May it please the court. There are many bad actors in this case. That undeniable fact produced the district court opinion here. But the district court made a fundamental error. It asked the wrong question. It asked whether plaintiffs had pleaded any claim that would fall outside of coverage. Of course they have. Travelers likewise in its briefing devotes virtually all of its briefing to making the case that plaintiffs, if they were able to prove a willful criminal violation by Mericle, could fall outside coverage. Don't we look at the facts that are alleged in the complaint? Absolutely. But on the facts that are alleged, plaintiffs also pleaded a theory that would not require the proof of a willful criminal conduct that caused their harm. What was the claim? A negligence claim. And they pleaded it in multiple places. Where? Where? Well, for example, count eight of the master individual complaint, which is at joint appendix 312. It's a civil conspiracy claim. That civil conspiracy claim, the plaintiffs pleaded a civil conspiracy among all the defendants specified, included Mericle, and they go on to say that Mericle and the others... Sorry, you're at 312i? Maybe I just pulled the wrong section, but I have A42, starting at A42. Is this count eight, the civil conspiracy? Yes, count eight civil... A312? Yes. Okay. Yes, A312. There, what they allege is that the parties paid bribes slash kickbacks. Now, that's contrary to the colloquy and what the federal prosecutor said, but we're going to assume the facts are true in the complaint. How do you conspire negligently if that is the count that you are referring to, count eight civil conspiracy? Because what the complaint describes, the complaints are subject to potentially two interpretations. There's broad language that would have Mericle in bed with Powell and everyone else, conspiring and aware of the ends of the conspiracy. Now, that's contrary to what the federal prosecutors told the court, but... Okay, the entering into the conspiracy, i.e. the agreement, is an intentional act. So, what you're suggesting is that what is not intentional is the consequences of the agreement. That's exactly right, and under the insurance policy, the consequences have to be intentional. Conspiracy law allows imputed intent, and because of the district court's mistake asking, are there the wrong question, the district court imputed the intent of other more culpable defendants to Mericle. The facts here suggest... It says, in order to conceal the first payment, Mericle signed and backdated a registration and commission agreement as an attempt to hide the payment as a broker's fee. Yes, Your Honor, and Mericle pleaded guilty to not... Well, that's a different matter, whether what they pleaded guilty to or not. What the facts pleaded in the complaint allow is the interpretation, conceivably, of two crimes. One, they could present to the court that Mericle bribed the judges to build the facilities, but had no knowledge, no awareness of the quid pro quo of the ongoing bribes by Powell to wrongfully sentenced juveniles. Now, under that interpretation, which is entirely consistent with the facts and is consistent with how they pleaded it, Mericle would be held liable not for willfully violating the rights of the juveniles, because what Mericle pleaded guilty to, which was paying the judges and then not affirmatively telling the IRS that he was aware the judges had mischaracterized their income for tax purposes, the victim of that crime was the IRS. It was the Federal Treasury. It wasn't the kids. So Mericle's theory, one of their theories... Look, one of their theories is Mericle participated directly in a criminal conspiracy, but another theory is Mericle did a bribe at the outset that made it part of the whole broader conspiracy, and, as they say here in paragraph 163, defendants knew or should have known that the natural consequences of those acts would be plaintiffs being unlawfully detained. Knew or should have known is not willful violation of a penal statute. It's not a knowing criminal conduct. It's negligence. And that theory... But I'm still confused. Under the policy, there had to have been an occurrence, which there wasn't here. Or there had to have been false imprisonment with either a knowledge that it was violating the rights of others or violations of the penal statute. How do we... How do you then fit within coverage? I mean, the exception for false imprisonment is if there is knowledge of violating the rights of others or penal statute. Clearly, that falls under one of these two categories. I still don't see how just by saying, oh, knew or should have known, therefore, there's coverage. It doesn't fit. Let me take the different pieces of your question one at a time. You first asked about coverage A, the coverage for bodily injury, which requires an occurrence. The case law is clear that an occurrence is defined as something unintentional and unintended. But it's not an accident. It's something that you did not intend, those consequences. That's what the Pennsylvania case law is clear. That's what an occurrence is. In this instance, if it were the case that Maracle, let's assume, contrary to the actual facts, let's assume Maracle bribed the judges to build the facilities but had no knowledge, was completely unaware that Powell was going to bribe the judges to wrongfully sentence juveniles there. But if the initial act was intentional... But the initial act didn't cause any harm to the kids. The only person defrauded was the IRS under that theory. Now, it's worth, I would urge the court to read carefully the colloquy, which is part of this record where the U.S. Attorney's Office came into open court... That's a different matter. We're talking about what is pled in the complaint. It's the four corners of the complaint. You make that argument, and it sounds appealing. But the guilty plea colloquy has nothing to do with what's in force. Well, with respect, under Pennsylvania case law, the guilty plea colloquy is very relevant. The Pennsylvania Supreme Court has relied on it in Minnesota Fire v. Greenfield. The Pennsylvania Supreme Court looked to the parallel criminal proceeding and to the colloquy to determine what was being pled in the complaints. And they looked to it and said it's relevant for insurance coverage. So under Pennsylvania state law... But that's as to what was what he did plead to. Here, you're arguing that the colloquy said that somebody didn't do something, and you're saying that that is fact. We can't take that as fact. I'm sorry. And to follow up on that, irrespective of the appropriateness of considering what may be in a guilty plea colloquy, what value is that colloquy here, where obviously what took place was a plea arrangement to account which did not include the conspiracy with which the defendant was originally charged. So it would be of very limited, if any, applicability. Well, the colloquy is relevant for a couple of reasons. One, the prosecutor explicitly states there's no evidence, zero, none, that Maracle knew of the quid pro quo. The colloquy also states that the payments... That gets back to Judge Rendell's question and point, however, that even if the prosecutor said that, that's not what guides us here. A, it's not within the four corners of the complaint. B, it's a prosecutor's statement. It's not an admission by your client or a finding that has been made from any record before the court at the time. Judge Smith, as I said, the Pennsylvania Supreme Court has looked to the colloquy. And I will point out in this case, the four corners includes the Bill of Information because the complaints explicitly incorporate the Bill of Information into the four corners. So that's part of the four corners. And the point is to say, if there are 49 theories plaintiffs have pleaded that are based on conduct that would fall outside the insurance coverage, and one theory that would fall within, it's black letter law that travelers has a duty to defend. In this case, plaintiffs were trying belts and suspenders. And so a theory that they argued to the district court, they argued on pages 12 and 13 of their supplemental Rule 12 opposition, and this is in the record, it's not in the joint appendix, I apologize for this, but there's their briefing to the district court on the Rule 12 issue. Plaintiffs argued, once a private individual becomes jointly engaged with state officials, and therefore is a willful participant in joint activity, the question is whether the prohibited action subjected or caused the deprivation of constitutional rights within the meaning of 1983. And what plaintiffs argue is that all that is necessary is if plaintiffs sets into motion a series of actions by which the actor knows or reasonably should have known would cause others to inflict the constitutional injury. So plaintiffs argued, look, it's entirely possible Merkle committed a crime, and he was negligent in not anticipating that Powell and others would commit the violations that caused the plaintiff's injuries here. But that's not a verd in the complaint, that he was negligent in not. With respect, Your Honor, it is a verd repeatedly. And we cite over and over again where the plaintiffs, they plead multiple theories, but the question I would ask Judge Rendell, would they be permitted to go to the jury and present evidence that Merkle committed a crime in paying the referral fee, and to argue that was a kickback, and that he was negligent in not knowing what happened next? I'll point out the district court in footnote four of its opinion explicitly said, yes, negligence is enough. That's what the plaintiffs pleaded, it's what they argued, and the district court agreed it was a viable theory. And if that's a viable theory, coverage lies. Let's hear from your opponent, and we'll have you back on rebuttal, Mr. Cruz. Mr. Arena? Good morning. Good morning. May it please the court, Sam Arena on behalf of Travelers Casualty Insurance Company of America. With my time this morning, in addition to answering Your Honor's questions, I would like to address several of the more creative arguments made on behalf of the Merkle defendants. You just got to hear some of those, as well as what we see are the gross mischaracterizations of the underlying facts as set forth in the three complaints that are at issue here. Because Pennsylvania law, as Judge Rendell said, under Pennsylvania law, the duty to defend is based solely upon the allegations, the factual allegations, that have been set forth in the four corners of the complaint. And since what these complaints actually allege cuts across and is at the heart of all of the issues before the court, that's where I would like to begin. There should be no dispute that the duty to defend turns on the four corners of the complaint, and I say should because throughout Merkle's briefs, Merkle attempts to have this court, as you just heard, go outside the four corners. Well, they claim that you've, in effect, alleged negligence in the complaint. Why is that not the case? The complaints do not allege negligence. As Judge Caputo, who's lived with the underlying cases, he's the sitting judge on both these coverage cases and in the underlying cases. As he's clearly laid out in his opinions, the underlying complaints don't set forth claims for negligence. They set forth claims for arising out of a criminal conspiracy to deprive the minor plaintiffs, the juveniles, of their constitutional rights. It was the opinion in this case, the last of the three opinions that Judge Caputo wrote chronologically. This one was? Yes. Correct. So he was able to rely upon his adjudications in the earlier. Yes, he had not only been through those, but he is also the sitting judge in the underlying cases, and I submit he's very well familiar, perhaps better than anyone else, in terms of what these underlying complaints actually allege. How do we define, or how does Pennsylvania law define arising under or arising out of? I would only point to Your Honor's opinion in Essex, but for. It's but for with respect to the insuring agreement, and as Your Honor found in Essex, it's but for causation with respect to the exclusions. That's the law of Pennsylvania. But in terms of the Four Corners rule in Pennsylvania, as I said there really should be no dispute as to the fact that that's the law of Pennsylvania, but Miracle would ask this Court to go outside the Four Corners and ask the Court to consider, as you just heard, Miracle's version of the underlying facts. What Miracle contends the evidence is going to show at trial. What Miracle believes are the true facts. But Miracle is also making a legal point, a purely legal point, in arguing that while it may be intentional, it is intentional conduct to enter into an agreement that is the requisite of a conspiracy, at the same time, what was not intended were the actual consequences here of that agreement. Now, that's a legal point. Is that the law? Is that the law of Pennsylvania? That would be nice if the factual allegations and the underlying complaints supported that argument, but they don't. We have, I believe, over 1,200 paragraphs of allegations across these three complaints. The master class complaint, which Your Honor should be aware, has no allegations in it at all of reckless conducts or anyone should have known. There's nothing in the master complaint at all. Well, all right. But even if it did, let's say that the theory was, as stated by Judge Smith, that there's an intentional act, but lack of knowledge of the consequences. Are you conceding that that, therefore, means it is a negligence cause of action? Not at all. Not at all. And, in fact, that's not what the complaints allege. The complaints allege an intentional criminal conspiracy to deprive the minors of their rights. Isn't new or should have known language the language of negligence? It can be, but you have to look at the context in which it's presented. In the civil conspiracy count, you cannot have a negligent conspiracy. It requires intent. And if the allegation is that the parties, and this is the overarching allegation throughout all of these complaints, that all of the defendants, including Miracle, and one of the points I wanted to get to was the fact that they say Miracle's not specifically identified, but we quote the paragraphs where they specifically identify Miracle by name. But the overarching allegations here across these three complaints are that the defendants, including Miracle, engaged in this intentional criminal conspiracy to deprive the minors of their rights. And part of that conspiracy comes with it, the execution and the consequences of the entire conspiracy. You can't, under Pennsylvania law, or the law of any jurisdiction that I'm aware of, having negligent conspiracy. You just can't have that happen. And the fact that sprinkled throughout these complaints are a reckless allegation, a new or should have new allegation. Clark complaint has one reckless allegation. As I said, the master complaints have none. There are a handful, just a handful, in the master individual complaint. And the law of Pennsylvania is quite clear, and we cite the cases, the so-called artful pleading cases, that if you sprinkle through a complaint that otherwise sets forth an intent-based claim, intent-based claims here, they don't change the type of claims that are presented. The fact that there's scattered through a complaint a reckless allegation here, a negligence-type allegation there, does not change that equation. So you're saying if I give you a concoction of club soda and antifreeze and you die, and yet I say, well, you know, I had no idea, you know, that this was going to cause you death, it doesn't convert it, even though I knew or should have known, it doesn't convert it into a negligent act on my part. Absolutely. Judge Rendell, if you thought the antifreeze was scotch, I can assure you that's a mistake I would not make. Also responding to Your Honor's point, one thing that I think has to be focused on here as well is that each of the claims against Miracle, and there are three types of claims, 1983, civil rights violations, civil conspiracy, which we were just talking about, and RICO claims, each of those three, as with respect to Miracle, as a non-state actor, important point, require intent. The plaintiffs cannot recover against Miracle on any of those theories through a negligence. The 1983 case, Miracle's a non-state actor, and as a non-state actor, he must conspire. Plaintiffs must prove that he conspired with a state actor. Again, there's no such thing as a negligent conspiracy. With respect to the RICO claims, they require fraud, intentional conduct. The predicate acts are crimes that require intentional, fraudulent conduct, so they can't recover against Miracle on the RICO, civil RICO claims with respect to negligent conduct. And we already talked about the civil conspiracy. You can't have a negligent conspiracy. So as a matter of law, with respect to each of the claims against Miracle, they all require intentional conduct. And with respect to this new or should have known, we cited this in our first trial court brief, but in cutting things down to the point to meet the requirements here for the word count, one citation was left on the cutting room floor, one footnote. With respect to the 1983 aspect of this, I'm not an expert on 1983 actions, but the new or should have known allegations, as I understand it, are pretty much boilerplate pleading in 1983 cases against state actors because the issue of whether qualified immunity applies in those cases turns on whether a reasonable official, government official, knew or should have known that the alleged action violated the plaintiff's rights. And the case we cited in the trial court was Walter v. Pike County, 544F3-182, 3rd Circuit, 2008. So I submit that another reason why you may very well see in these complaints some new or should have known allegations, particularly in the 1983 claims. What is that? Does that cross the line then into a viable claim? I don't believe so at all. A negligence claim? Absolutely not. Again, 1983, there can be no recovery against a non-state actor without proof of a conspiracy. The coverage under the policy is excluded for knowing violation of rights of another under coverage B here. So I gather your position that knowledge means actual knowledge, not constructive knowledge. I would go back to, Your Honor, I'd go back to the allegations in the complaint. And here they allege that Miracle knew. They allege that as part of the conspiracy, all of the defendants knew. That's what they say, and I believe that's inescapable. They also allege that this was intentional conduct. That cuts across all of the counts in the complaint. Taking you back to the occurrence question, how should we read the Jean's Restaurant decision? Does it suggest, does it require us to conclude that all non-intentional conduct is an occurrence? I'm not sure that I'm following your question, Your Honor. Well, if you're not following the question, then it probably doesn't warrant a response. My recollection is that that opinion was discussed, I thought, in both of the briefs. It is cited. Pennsylvania Supreme Court case. Very brief one, if I recall. May I hear Your Honor's question again? I asked how we should regard that decision and whether it requires us to conclude that if it's non-intentional conduct, any non-intentional conduct, it's an occurrence. I don't believe that intentional conduct certainly is not supportive finding that there is an occurrence. I guess I, taking it in a vacuum, I don't know that I can answer Your Honor's question. Anything else you want to tell us? The comment was made by Mr. Cruz regarding the footnote in Judge Caputo's Clark and Wallace opinions. Those footnotes, first of all, I don't believe they have any impact with respect to the issues that are before this court whatsoever for several reasons. Number one, they are dicta in the context of the Clark and the Wallace cases. Judge Caputo had already found that the complaints on the 12B6 motions set forth claims for intentional conspiratorial conduct. So number one, they're dicta. But the short answer is, as I've said before, they have no application to Miracle. They were, to the extent they have any effect at all, they would have effect with respect to the state actors. All right. What about penal exclusion public policy? With respect to the public policy, we've laid out in our brief that there are sufficient grounds here for a finding that there should be no coverage for this type of intentional criminal conspiracy to violate constitutional rights under the public policy of Pennsylvania. We've laid that out in a brief with one point that I would like to note with respect to that, more of a response to what was set forth in the reply brief on behalf of the Miracle defendants. The Miracle defendants attempt to convince the court that it's premature to consider the duty to defend issue in the context of a public policy argument at this point in the case. In support of their position, they cite three federal trial court positions, three federal trial court opinions. Those opinions don't have any factual basis in terms of analysis, and they certainly don't cite to any Pennsylvania law in support of those positions. They cite Perlberger, CGU, and Seticum in support of their positions, and I would ask that the court take a close look at those opinions because they are simply not grounded in Pennsylvania law. Perlberger contains no analysis whatsoever, and it's based on the court's assumption that the carrier there did not intend to pursue the public policy argument at the duty to defend stage. CGU, the next opinion, simply cites the Perlberger with no analysis. And Seticum did find that the public policy issue was not right, but stated that, quote, again, because there were prior statements to this effect, it must be emphasized that Seticum's state court complaint alleges both negligent and intentional conduct, which is not the situation we have here. So those cases stand, I think, in stark contrast to other decisions of the Pennsylvania Supreme Court, later decisions. Perlberger was 1995, CGU was 2001, and Seticum was 1993, but along comes the Pennsylvania Supreme Court in Greenfield and finds at the duty to defend stage of the case, there was no coverage, no duty to defend and no duty to identify as a matter of public policy. So the earlier federal trial court cases have no analysis in them whatsoever. They rely on each other and are at odds with the later decided case by the Pennsylvania Supreme Court. Thank you. Good. Any further questions? Thank you, Mr. Arena. Mr. Cruz? Your Honor, I'd like to make three points in rebuttal. Sure. The first point is my learned colleague, in answering a question from Judge Sirica, gave an answer that was an error in that Your Honor asked what the law of arising out of was under Pennsylvania, and my learned colleague said that Pennsylvania law is absolutely clear. It is but for causation, and he cited this court to the Essex case. Pennsylvania law is anything but clear on this question. The cases are all over the map, and indeed, the Essex case is an unpublished opinion of this court, authored by Judge Sirica and joined by Judge Smith. There's another unpublished opinion of this court, authored by Judge Smith and joined by Judge Sirica, that says precisely the opposite in a different context, and that's the national casualty versus WYO missing case, where it says arising out of in an exclusionary clause means proximate causation. Likewise, the Pennsylvania case law, the best case is the Eichelberger case, in our opinion, that concludes it means proximate causation, but there are cases on the other side, and what the courts have said is it depends on the context. So it is not absolutely clear. The cases are on both sides of it. But Judge Caputo said causally connected. He was giving it a fairly broad reading. He read it as but for, and my point is the Pennsylvania case law, if you look at the Eichelberger case, the Pennsylvania Superior Court is very explicit that in an exclusionary clause where there's any ambiguity, and in this instance we would submit there's considerable ambiguity, that it should be read against the insurer and so should require more than just but for causation. A second point Judge Smith asked about whether Pennsylvania law was whether the insured intended the consequences, and that is precisely Pennsylvania law under coverage A, under the bodily injury standard, and I would point this court to the Illitsky case where the Pennsylvania Supreme Court discusses that at considerable length and says that the damage caused has to be of the same general type. So if you commit one crime, in this instance, the alleged bribes dealing with the construction of the prison, the damage there is defrauding the IRS. It's not the same general type as anticipating that there would be a subsequent corrupt bargain to misuse the judicial powers and improperly send juveniles to prison. A subsequent corrupt bargain. Your entire position depends, does it not, on the notion that there are two separate conspiracies, one to build the building, the other to unlawfully detain juveniles. With one tweak. That's not what's pleaded. With one tweak, two separate crimes, and that is what's pleaded. What's pleaded is one conspiracy. With respect, Your Honor, it's pleaded both ways. The plaintiffs wanted belt and suspenders, so they try to do it one way, but they also plead, if you look at paragraph 656 of the master class complaint, plaintiffs plead, on or before January 2003, defendants agreed that Powell and Maracle would pay the money. Powell understood the payments to be a quid pro quo for the judge's exercise of judicial authority to send the juveniles. The complaint explicitly pleads just Powell. It doesn't say Maracle understood it to be a quid pro quo, and I would suggest the reason is plaintiffs were aware there was considerable evidence, in fact, that Maracle didn't know that. And that's the third and final point. Look, plaintiffs would be thrilled to recover. If they could prove Maracle could do this stuff, they'd be thrilled. But the question is not that. It's are they also trying to recover if the evidence shows Maracle didn't know about Powell's corrupt bargain? And they unequivocally are. If you look to, you know, my learned brother says there are a few stray references to knew or should have known. The master individual complaint uses that language in paragraph 109, paragraph 113, paragraph 114, paragraph 124, paragraph 126, paragraph 136, paragraph 139, paragraph 163, paragraph 164. And the Clark complaint uses it in paragraph 248. This is not one stray reference. And he says, well, it's artful pleading. The pleading is that the plaintiffs are trying to get maximum liability. So one of the theories they're pursuing, which they affirmatively argue to the district court, is that we can get recovery against Maracle under 1983 if he simply knew or should have known what Powell and Chivarella were doing. And the district court explicitly agreed. Remember the standard. Let me take you back to paragraph 109 that you just cited to us. I looked at this before. This is a paragraph that avers 1983 violations. There are numerous subparagraphs there. And all of them begin with defendants plural. All of them. Doesn't single anybody out. Doesn't limit them. All of them are defendants plural. Everybody including Maracle. Precisely. And they are, as I see them, allegations of intentional conduct relative to conspiratorial. With respect, Judge Smith, it says unlawfully and or recklessly. Recklessness is one of the bases they're trying to prove. And it's belt and suspenders. And if you look at the Pennsylvania Supreme Court, they say, look, if there are lots of theories and one that would fall within coverage, then it's got to be coverage. The standard is, is it possibly covered? And, you know, my learned colleague dismisses footnote four of Judge Caputo's decision. That was dicta. Judge Caputo explicitly said. So does your position for coverage come down to the import of the averment of recklessness? Recklessness and negligence. Many of those I gave are not just recklessness. They're new or should have known. Have you given us your discrete list of everywhere in the complaint where you allege that your brief outlines specifically every paragraph? I believe the brief does, and I've listed them here in the argument, the ones that say either recklessness or new or should have known. And it's not artful pleading. It's they're trying to get our client to pay them damages, and they understand. Remember, the bill of information is explicitly incorporated into the complaint. They know that there is an evidence that Maracle knew about the bargain, but Maracle, they want Maracle to pay damages. That's why they pleaded it this way. It's not because they were trying to impact the insurance litigation. It's because they're trying to get a recovery for what they think Maracle knew or should have known, and under Pennsylvania law, that satisfies the test of possibly falling within the coverage. Good. Any other questions? Thank you very much. The case was very well argued. We'd like to have a transcript made of the oral argument, ask the party's share in its cost, and if you would check with the clerk's office, they'll tell you how to do that. Thank you very much. Take the case under advisement. Thank you.